J-S11043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAMAR TATUM | : | |
| | : | |
| Appellant | : | No. 340 WDA 2024 |

Appeal from the Judgment of Sentence Entered February 6, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007415-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAMAR TATUM | : | |
| | : | |
| Appellant | : | No. 591 WDA 2024 |

Appeal from the Judgment of Sentence Entered February 6, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0008274-2023

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED: May 20, 2025**

Shamar Tatum ("Tatum") appeals from the judgment of sentence imposed following his convictions for firearms not to be carried without a license, tampering with or fabricating physical evidence, and persons not to possess firearms.[1]  We affirm.

---

[1] *See* 18 Pa.C.S.A. §§ 6106(a)(1), 4910(1), 6105(a)(1).

On the night of July 15, 2022, Detective Santino Mammarelli and his partner, Detective Jeffrey Tomer, were patrolling the Hill District area of Pittsburgh in an unmarked vehicle and wearing plain clothes.[2]  Detective Mammarelli, having made hundreds of narcotics and firearms arrests there previously, was very familiar with the neighborhood, and considered it a high-crime area.  After turning into a city housing project, the detectives observed Tatum crossing the street directly in front of their patrol vehicle with a large, weighted, "L-shaped" object in the pocket of his baggy, thin, "semi-translucent" gym shorts, causing the shorts to droop down on that side.  N.T., 11/9/23, at 32, 47.  Based on their experience and training, both detectives believed this object was a firearm, with Detective Tomer emphasizing that "he could almost see the [firearm's] barrel sticking down off the body."  *Id*. at 47.  Detective Mammarelli was also very familiar with Tatum, having encountered him "hundreds of times" and "almost daily or every other day" while patrolling the area over the past four years, and knew that Tatum did not have a concealed carry permit.  *Id*. at 35.

After bringing their patrol vehicle to a stop alongside and slightly ahead of a nearby parked vehicle, the detectives watched as Tatum approached and "ducked down" behind the "passenger[-]side front . . . hood area" of that parked vehicle.  *Id*. at 34.  This vehicle had an individual in the driver's seat,

_____

[2] Although the detectives described their attire as "plain clothes," they clarified that they were wearing their police badges along with black, bulky vests that displayed "POLICE" on the front in yellow block lettering, an outfit the detectives typically wore while on duty.  N.T., 11/9/23 at 30, 42, 46.

but nobody was in or standing beside the passenger's seat, even though its door was open. While Detective Mammarelli could not see Tatum from his vantage point, Detective Tomer was able to look through the vehicle's open driver-side window and passenger-side door to see Tatum crouching and reaching under the vehicle with his right hand. Detective Tomer informed his partner that he believed Tatum placed a firearm underneath the vehicle, and both detectives exited the vehicle. As the detectives approached Tatum, who was now walking towards the front of the vehicle, Detective Tomer noticed that Tatum no longer had anything in his shorts' pocket. Immediately thereafter, Tatum turned and ran away.

Although the detectives called out to Tatum and briefly gave chase on foot, they quickly cut their pursuit short to search for the firearm that they suspected Tatum had been carrying. Detective Tomer explained that he decided to search for the firearm rather than chase Tatum due to past experiences "where there's people around, and [he] would chase" and catch a suspect first, only to return and find the firearm missing. *Id*. at 50. Detective Tomer found a loaded firearm underneath the parked vehicle where he observed Tatum reaching only "a matter of seconds" prior. *Id*. While Detective Tomer acknowledged that other individuals were nearby at the time, he confirmed that nobody other than Tatum had crouched behind or reached under the vehicle. After recovering the firearm, the detectives returned to their vehicle to continue their pursuit of Tatum with the assistance of other

officers in the area. Police thereafter arrested Tatum and charged him with each of the above-listed crimes.[3]

The matter proceeded to a bifurcated jury/non-jury trial at which the Commonwealth presented testimony from both Detective Mammarelli and Detective Tomer describing the above sequence of events. The Commonwealth additionally presented video surveillance footage taken from a local building that captured the encounter from the passenger's side of the parked vehicle. *See id*. at 62. While reviewing the footage before the jury, Detective Tomer confirmed that he could see Tatum wearing basketball shorts, walking "directly in front of" his vehicle's headlights and towards the nearby parked vehicle, where Tatum subsequently crouched down and reached under the vehicle. *Id*. at 64, 66-67. The footage similarly showed that no one else approached the vehicle prior to the detective's recovery of the firearm. *See id*. at 68. The Commonwealth also established that the recovered firearm was operable, and that Tatum did not have a license to carry a firearm nor a concealed carry permit on the date of his arrest. Lastly, Detective Tomer explained that he did not have the police crime lab test the gun for fingerprints, as he believed that when he recovered the firearm without gloves, he contaminated it to the extent that any fingerprints recovered would be his. Tatum did not testify in his defense.

---

[3] Prior to trial, Tatum filed a counseled motion to sever the charge of persons not to possess firearms from the Commonwealth's remaining two charges. The trial court granted the motion and docketed the charge separately.

At the conclusion of the trial, the jury convicted Tatum of firearms not to be carried without a license and tampering with or fabricating physical evidence. The matter then proceeded immediately to a non-jury trial for the remaining charge of persons not to possess firearms. The Commonwealth introduced Tatum's prior conviction for aggravated assault, and the trial court found Tatum guilty of this charge. The trial court postponed sentencing on all three convictions for the preparation of a pre-sentence investigation report.

On February 6, 2024, the trial court imposed an aggregate sentence for all three convictions of forty to eighty months' incarceration, followed by a one-year probationary term. Tatum filed a counseled post-sentence motion at each docket, challenging, *inter alia*, the weight of the evidence underlying his convictions.[4] The trial court denied the motions. Tatum filed a timely notice of appeal at each docket, and both he and the trial court complied with Pa.R.A.P. 1925.

Tatum presents the following issue for our review: "Whether the trial court erred in denying . . . Tatum's post-sentence motion[s] requesting a new trial where his convictions for person not to possess firearms, firearms not to be carried without a license, and tampering with physical evidence were

---

[4] Although Tatum initially only filed a timely post-sentence motion for the two convictions docketed at CP-02-CR-0007415-2022, he subsequently filed a counseled PCRA petition to reinstate his post-sentence and direct appeal rights at docket number CP-02-CR-0008274-2023, which the PCRA court granted on April 22, 2024. Accordingly, Tatum filed a timely post-sentence motion challenging the weight of the evidence for each of his convictions at both dockets.

against the weight of the evidence?" Tatum's Brief at 8 (unnecessary capitalization omitted).

Tatum argues that each of his convictions were against the weight of the evidence. As our Supreme Court has explained:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (brackets and citation omitted). Thus, in order for a defendant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court." *Id*. at 546 (citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted, emphasis in original).

Tatum argues that the verdicts were against the weight of the evidence as they relate to each of his convictions, as the Commonwealth's evidence was weak and circumstantial. Preliminarily, Tatum points out that the trial court incorrectly found that the vehicle Tatum ducked behind was unoccupied, even though both detectives testified that a person was occupying the driver's seat at the time. Tatum further highlights that in addition to the driver of this vehicle, there were other people present on the scene as well. Accordingly, Tatum asserts that because "the detectives never bothered to follow up or investigate" the other people present, the detectives prematurely decided that Tatum had to be the owner of the firearm. Tatum's Brief at 21. Absent such an investigation, Tatum claims that the Commonwealth's circumstantial

evidence cannot properly refute the possibility that "[t]he firearm could have already been under the car" prior to the detectives' arrival, or that it "was abandoned by" someone else present at the time. *Id*. at 21-22. He contends that these theories are especially viable given Detective Mammarelli's description of the neighborhood "as a 'high crime' area where he had made hundreds of [firearm] arrests[,]" and Detective Tomer's concerns that another person would take the firearm if he were to momentarily leave. *Id*. at 21.

Tatum additionally argues that "[t]he trial court [improperly] relied on testimony that . . . Tatum had a heavy object in his gym shorts that the detectives identified as a gun." *Id*. at 22. Tatum essentially maintains that, because the Commonwealth "did not attempt to put forward any direct physical evidence" tying Tatum to the firearm, or any witnesses who saw Tatum with the firearm itself, the Commonwealth's reliance on two observations of "little more than a bulge [in Tatum's pocket as he] walked across a dark street at night[,]" was too speculative and unreliable to conclude that he possessed the firearm in question. *Id*. at 23. Accordingly, Tatum contends that because "the detectives [simply] found a firearm, saw an individual they knew did not have a license, and assumed the rest of the details without further investigation[, his guilty verdicts] should shock the conscience of" the court. *Id*. at 24.

The trial court considered Tatum's weight challenge and concluded that it lacked merit. The court reasoned that:

Two witnesses with extensive experience and training in the identification of concealed weapons testified that they observed a bulge in [Tatum's] shorts that appeared to them to be a firearm. They observed [Tatum] obscure himself from view and reach under an unoccupied car. They observed [Tatum], now without the bulge in his pocket, walk away from the car and run from the police. They recovered a firearm under the car. The jury viewed video of the event. It neither shocks the court's conscience nor offends the court's sense of justice that the triers of fact reasonably concluded that [Tatum] carried a concealed weapon and tried to hide it from the police. Thus, the weight of the evidence claim must fail.

Trial Court Opinion, 7/19/24, at 5 (unnecessary capitalization omitted).

Based on our review, we discern no abuse of discretion by the trial court in denying Tatum's challenge to the weight of the evidence.[5] As explained above, this Court will give the gravest consideration to the findings and reasons advanced by the trial court judge when reviewing its determination as to whether the verdict is against the weight of the evidence. *See Clay*, 64 A.3d at 1055. Moreover, one of the least assailable reasons for denying a new trial is the lower court's conviction that the verdict was not against the weight of the evidence. *See id*.

Here, Tatum is essentially asking this Court to reweigh the evidence to accord no weight to the trained detectives' identification of the object in Tatum's pocket as the recovered firearm in question, or to the surveillance

_____

[5] We note that although the trial court stated that the parked vehicle was unoccupied, both detectives testified that the vehicle had someone sitting in the driver's seat. *See* N.T., 11/9/23, at 41, 47. However, this insignificant error does not affect our disposition of Tatum's weight claims.

- 9 -

footage supporting their version of events. This, we cannot do. **_See Talbert_**, 129 A.3d at 545 (holding that the weight to be accorded to the evidence and testimony presented at trial was exclusively for the fact-finder, which was free to believe all, part, or none of the evidence and testimony and to determine credibility). Rather, this Court's role is to review the exercise of discretion by the trial court in ruling on the weight claim. In this regard, we discern no abuse of such discretion.

Importantly, we note that the trial court judge determined that Tatum's guilty verdicts did not shock her conscience. Moreover, the trial court heard testimony from both detectives present on the scene, each with multiple years of training and experience as it relates to identifying concealed firearms and making firearm arrests, and each detective was certain that Tatum had a firearm in his shorts' pocket. Although neither of the detectives saw the gun itself, they came to this conclusion based on their ability to see a clear outline of a firearm coming through Tatum's thin, "semi-translucent," and baggy, mesh gym shorts. N.T., 11/9/23, at 32, 47. Further Detective Tomer never lost sight of Tatum between the time Tatum ducked down and reached under a nearby parked vehicle, and when Tatum walked away from the vehicle without any bulge in his pocket. Similarly, neither detective observed any other person approach or reach under the vehicle prior to the recovery of the firearm. Lastly, the trial court recognized that the Commonwealth presented the video surveillance footage to the jury, which captured the encounter and

showed: (1) Tatum ducking and crouching down by the front of the parked vehicle; and (2) that no one close approached the vehicle prior to the detectives' recovery of the firearm. On this record, we discern no abuse of discretion by the trial court in denying Tatum's weight challenge, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

5/20/2025